Grimke, J.,
delivered the opinion of the court:
■ The proposition which is submitted to the consideration of the *146 court, is whether a written will can be revoked by a subsequent nuncupative one. But as we have power to decide only cases and not questions, we must decide, not whether a will, but whether the will made in the island of Jamaica was revoked by Uio will executed at G-allipolis. And this form of stating and determining the proposition will not deprive the parties of any right to which they would otherwise be entitled. The written will makes a disposition of the whole estate of the testator, and if the verbal will is legal, it will revoke the former disposition of the personal property. It was once a contested question, whether a will of personalty should be executed according to the law of the testator’s domicile or of the place where the goods are situated. It was always admitted, that in case of intestacy the law of the intestate’s domicile must regulate the distribution of his personal property. But a distinction was attempted to be made between a presumed intention in the one case and an expressed one in the other; and it was supposed that it was only where a will is not expressed that the law of the domicile was raised up to execute a presumed will. But inasmuch as personal property *has no locality but accompanies the person of the owner, the consequence necessarily is, that the voluntary disposition, as well as the distribution of it, must be governed exclusively by the law of the domicile. So that it is now received as a settled principle, that if a will of personalty is made in a foreign country, and then the testator changes his domicile, the will must be executed according to the law of the new domicile. 3 Merivale, 67. The written will of Mr. McCune, therefore, although made in the island of Jamaica, must be governed by the law of Ohio. There does not appear to be any objection to its validity on that ground, and thus is presented the single question, whether the subsequent nuncupative one has the power to revoke it.
In England, before the statute of frauds, a writen will might be revoked by a nuncupative testament, and it was in consequence of .an atrocious conspiracy to set up a nuncupative will over a prior written one, that the glaring defect in the law came to be perceived, and that the statute was passed. The history of the transaction is given in a note to Matthews v. Warner, 4 Ves. 196. Mr. Cole, three years before his death, had made a written will, giving three thousand pounds to charitable uses. Mrs. Cole set up a nuncupative will, by which the whole estate was given to her. Upon the trial, it *147 Appeared that most of the witnesses to this will were perjured, and •that Mrs. Cole was guilty of subornation. And upon this occasion Bord Nottingham said, “ I hope to see, one day, a law that no written will should be revoked but by writing.” The next year the statute of frauds was passed. In England, then, a will of personAlty, which need not be attested by witnesses, can not be revoked by a verbal testament.
Section 2 of our statute of 1831, directs that every will disposing of real or personal property shall be in writing, and attested by two witnesses. Section 5 declares that any last will and testament shall be revoked by cancellation, or by subsequent will or codicil made as aforesaid. Sections 11 and 12 authorize the making a nuncupative will. And thus, I believe, it will be found that we, in Ohio, have enacted the same salutary provision which is contained in the English statutes of frauds; though it must be remembered that there Are much stronger reasons why such a law should be established here, than in Britain, as a will of personal property must here be attested by two witnesses. Section 5 of our act declares that a will revoking a former will shall be executed as aforesaid. The wills before spoken of are those of *real and personal estate, and thus the statute, by necessary implication, or rather by a plain and expressed intention, has declared that such revoking will shall also be in writing and attested by two witnesses; for the clause which permits a nuncupative will to be made, is placed by itself and postponed to sections 11 and 12, so that the words as aforesaid, in section 5, can not, without confusing the whole arrangement of the testamentary clauses, be supposed to have any reference to sections 11 and 12. All our prior laws on this subject •correspond with this view, and seem to have forbidden the revocation of a written by a nuncupative will. The act of 1808, in sections 1 and 2 declares how a written will shall be executed, but is not followed, as is the present law, by a section prescribing the manner of revocation. Section 3 directs how a nuncupative will shall be executed, and then provides that no such will shall revoke a written will. The act of 1808 is similar to the present statute. It declares how a will shall be revoked in a clause antecedent to that which gives power to make a nuncupative will. It omits section 3 of the act of 1805, because the manner of revocation being defined in another section, sucha declaration became unnecessary and would have been supererogatory. In truth, there could *148 not be any doubt about this matter, if it were not for a mere change-in the arrangement of the sentences in these -laws, which shows how important it is, in framing a new statute, not to indulge in any arbitrary change of even the form of an old one; since, if it does not lead to any ultimate difficulty, it is calculated to produce doubt, ■which should, as much as possible, be avoided.
There are very good reasons why an individual, he who has not-yet- executed a written will, should be permitted, under peculiar circumstances, to make a verbal one. But when he has already executed a written will with all the solemnities of the .law, there are equally strong reasons why the revocation of it should be attended with the same solemnities. It is not in restraint of this freoaction; it is to protect him from a fraudulent conspiracy, very likely to take place, where he has already disposed of his property counter to the wishes of those who surround him. The frauds practiced in England gave rise to the enactment in the statute of frauds.. The act of 1805 was framed in analogy to that law; and the act of 1831, with a design equally plain, has also forbidden the revocation of a written by a nuncupative will.