TYRREL BARKSDALE, propounder, plaintiff in error, *vs.* EUSEBIUS A. HOPKINS and wife, *et al.* caveators, defendants in error.

[1.] If a will is before a probate Court for probate, and a second will is pleaded as a revocation of the first, the probate Court may take notice of the second, although it may be, that the second is one which has not been admitted to probate, and one which is not offering itself for probate; consequently, the probate Court may hear proof touching the execution of the second.

[2.] The judgment in a propounding for probate, does not bind an heir who was not a party to the proceeding, and who had no knowledge of the proceeding.

Barksdale vs. Hopkins and wife et al.

Caveat to will, in Upson Superior Court. Tried before Judge CABINESS, May Term, 1857.

This was an appeal from the Ordinary, on the propounding of a paper dated in 1848, as the last will and testament of Mrs. Macharine Bunkley. The administrator of Edward G. Harvey, E. A. Hopkins, and his wife, as heirs at law, entered a caveat, on the ground that, in 1850, the deceased, by a paper properly attested, under the statute of frauds, revoked this paper of 1848.

On the trial, propounder proved the execution of the paper of 1848. Caveators then proposed to prove the paper of 1850, in which there was a revoking clause, by the same witness. Propounder objected, on the ground that the Superior Court had no jurisdiction to hear the proof. The Court overruled the objection, and propounder excepted.

After the paper of 1850 was given in evidence, propounder offered in evidence the record of the Superior Court of Upson county, and the *remititur* from the Supreme Court, setting aside and annulling the paper of 1850 as a will. Caveators objected that the copy of the bill of exceptions was a part of the record and not included. The Court so held, and propounder excepted.

The propounder then offered the entire record; to which caveators objected on the grounds:

1st. Because they were neither parties or privies to the judgment.

2d. Because the record showed that the revoking clause was not in issue on said trial.

3d. Because the record showed that the judgment was obtained upon the evidence of John M. Barksdale, who was a large legatee under the will of 1848, now propounded for probate, and could not be used as evidence in his favor.

Propounder introduced some evidence to show notice of the pendency of the litigation, to Edward G. Harvey, and

Eusebius A. Hopkins, and also a deed from Hopkins to Bunkley, for his interest in the estate.

The Court sustained the objections, and ruled out the record, and propounder excepted.

Propounder moved to withdraw the paper of 1850, from the jury, on the ground that it was once of record in the Ordinary's office. The Court refused the motion, and propounder excepted.

Propounder then moved for a continuance, on the ground that they had knowledge of the death of Mrs. Hopkins, which had just been communicated to their counsel. The Court refused the motion, and propounder excepted.

B. HILL, and LEVI SMITH, for plaintiff in error.

T. R. R. COBB, and C. PEEPLES, for defendants in error.

*By the Court.*—BENNING, J. delivering the opinion.

Tyrrel Barksdale propounded a writing in the Court of Ordinary of Upson county, for probate, as the will of Mrs. Macharine Bunkley. The writing was dated in 1848.

To the admission of the writing to probate, Edward G. Harvey, Eusebius A. Hopkins and his wife, Anna, as persons "of the next of kin" to Mrs. Bunkley, entered a caveat, resting on several grounds.

Among the grounds was this : " That the said pretended will was revoked by the testatrix during her life time ; to-wit : first, by actually cancelling and obliterating the seal attached thereto, with the intention of thereby exhibiting the *animus revocandi;* and secondly, by subsequently, on the 28th January, 1851, (a mistake doubtless for 1850,) executing, in the presence of three credible witnesses, an instrument in writing, whereby, she expressly revoked all former wills by her made."

What is thus contained in this ground, is all that the caveat said about this " instrument in writing" of 1850. The

caveat did not say, whether the caveators offered the instrument itself, for probate, or not.

The issue, then, raised by the allegation respecting this instrument, was, whether the instrument revoked the writing of 1848, propounded by Barksdale for probate.

This issue was one raised in the Court of Ordinary, but carried, by appeal, into the Superior Court. In respect to this issue, therefore, the Superior Court became a probate Court; and consequently, whatever was admissible as evidence on the issue, whilst it was in the Court of Ordinary, was, in like manner, admissible on the issue after it got into the Superior Court.

This being an issue—I may say the issue—and this issue being thus in the Superior Court, as a probate Court, it came on for trial; and on the trial of it, the counsel for the caveators, presented the instrument in writing pleaded by them in the caveat, as aforesaid, to one of the subscribing witnesses to the instrument, and offered to prove it by him.

The instrument thus presented to the witness, was one of which the commencement was as follows: "State of Georgia, Upson County. I, Macharine Bunkley, being in feeble health, yet of sound disposing mind and memory, do constitute and ordain this my last will and testament, revoking all others." The rest of the instrument, in twenty-two "items," purported to make dispositions of her property, and to appoint an executor. The instrument purported to be signed by her, to be subscribed by three persons as witnesses, and to be dated the 28th of January, 1850.

If this instrument was valid as a will, and the clause of revocation was a part of it, as the part of a will, then it is plain, that the instrument as a valid will containing this clause, would sustain the allegation of revocation, in the caveat; and if the instrument was not valid as a will, yet, if the clause of revocation was not a part of it as the part of a will, but was a separate, independent, writing of revocation; or if the clause, though a part of the instrument as the part of a will,

was also something additional, by virtue of which something it was to have operation, whether the rest of the instrument had operation or not, then, it is equally plain, that the instrument, though itself not valid as a will, yet, as containing a valid writing of revocation, would sustain the allegation of revocation, contained in the caveat.

In any case, therefore, it is manifest, that evidence in proof of the instrument, would be pertinent.

This being so, the counsel for the caveators, offered as aforesaid, in proof of the instrument, the evidence of one of its subscribing witnesses.

To the admission of this evidence, the counsel for the propounder, presented objections of which, the following is the substance:

1st. They said, that in every case, in which an instrument is to be used as a will, one single case excepted, the only evidence admissible in proof of the instrument, is the judgment of a probate Court, establishing the instrument as a will; that the single excepted case is that in which, the instrument itself, being offered for probate, to a probate Court; that this instrument was not itself being offered for probate to the Court; therefore, that, if the purpose of the caveators, was to use this instrument, including the revocatory words, as a will, then the evidence of a person subscribing the instrument as a witness, was not admissible in proof of the instrument.

2dly. They said, that if an instrument written for a will, has in it words revocatory of all other wills, those words can be operative, only in case the instrument shall be operative as a will; that therefore, if the purpose of the caveators, was to use the revocatory words in the instrument by themselves, to show a revocation of the will of 1848, the purpose was an illegal one, and that no evidence of any sort, was admissible in aid of an illegal purpose.

Were these objections good?

And first is it true, that in a probate Court, (the Court was sitting as an appellate probate Court,) an instrument intended

to be used as a will, to show that another instrument propounded as a will, has been revoked, cannot be proved by any other evidence, than that of a judgment of probate, except in the single case in which, the instrument, not having been admitted to probate, is itself offered for probate?

Now that this proposition may be true, a second one has to be true; viz., this: that in a probate Court, a will can have no revocatory efficacy, unless it has been admitted to probate, or is offering itself for probate. Is, then, this latter proposition true?

If a man by will gives property to A., and by a second will gives the same property to B., and B. dies before A., or B. is a person, that by reason of some disability, cannot take the property given, the second will revokes the first; and yet, in both of these cases, the second will is void. *Com. Dig.* "*Estate by Devise.*" "*Revocation.* (*F.* 1.) *and note.* This proposition, I believe, is not disputed.

These are cases in which, it cannot be true, that the revoking will was admitted to probate: the revoking will was void. They are cases too, in which, it cannot be true, that the revoking will offered itself for probate; that a will professing itself to be revoked, should yet offer itself for probate, is absurd.

This second proposition, then, is not true. What is the true proposition on the subject, to be deduced from these cases? It would seem to be this: that whenever a will is efficacious for the purpose of revoking a former will, a probate Court may take notice of it for that purpose, although such will is one that has not been admitted to probate, or, even one that is not capable of being admitted to probate.

And this same proposition would seem to follow also, from the nature of the jurisdiction of a probate Court. That Court has power to say what is, and what is not, a will, and therefore, has power to say, what is, or is not, a cause of preventing a writing from being a will. Having this power, it can determine for itself, whenever the occasion requires it, wheth-

er a writing is a will or not: it dont have to wait for some other Court to determine that question for it.

In England, the common law Courts do not notice a will of personalty, unless it has been admitted to probate. Why? Those Courts have no jurisdiction over wills of personalty. They do notice wills of realty, although they cannot have been admitted to probate. Why? They have jurisdiction over wills of realty.

The power given by statute to our probate Court, the Court of Ordinary, is general, and is unrestricted. " The Inferior Courts in each county shall have jurisdiction and authority to hear and determine all causes, matters, suits, and controversies, testamentary, which shall be brought before them, touching the proof of wills," &c. *Cobb Dig.* 281. This is the language of our statute.

Now when a first will is offered to the Inferior Court, for probate, and a second is pleaded as a revocation of the first, whether the second is a revocation of the first or not, is a " matter" " touching the proof of" the first. It is a " matter" therefore which, by this statute the Inferior Court has the power to hear and determine. But it is such a matter that the Court cannot determine it, without determining, whether the second is *a will* or not; for the whole revocatory virtue of the second depends on whether, it is a will or not. Therefore by the statute the Court has the power to determine, whether the second is a will or not. And there is nothing *expressed* in the statute, to restrict the exercise of this power, to the case in which the second will is itself *offered for probate, in addition* to being pleaded to show a revocation of the first. And what principle of construction is there, that would authorize, much less compel us, to say, that there is any thing *implied* in the statute so to restrict the exercise of the power. I know of none.

[1.] Upon the whole, then, we think, that if a will is presented for probate, and a second will is plead as a revocation of the first, the probate Court may take notice of this

Barksdale vs. Hopkins and wife et al.

second will, although that will may not have been admitted to probate, and although it may not be offered for probate; and, consequently, that such Court may hear the proof touching the execution of the second will.   Therefore, we think, that the Court was right in receiving the evidence of the subscribing witness to the will of 1850.

It may be remarked, however, that it is not clear, although the counsel for the propounder seemed to assume it to be so, that this will of 1850 was not before the Court *for probate.* The plea in the caveat, *(supra)* seems to have been studiously so framed, that the caveators might, according to the exigency of their case, at option take either alternative, that the will was offered for probate, or that it was not offered for probate.

The conclusion to which we have come, overruling as it does, the first of the propounder's two objections to the admission of the evidence, relieves us from the necessity of deciding the second of those objections; for if the evidence was legal for any purpose, as, to show the instrument of 1850, *a will* with a clause of revocation, it was *admissible ;* and whether it was admissible or not, was the only question.

But as the second of the two objections, was the one mainly argued by the counsel on both sides, the Court will express the inclination of its opinion on that objection.

Is it true, then, that the clause of revocation in the instrument of 1850, could not be operative unless that instrument was operative as a will ?

And first has a man the *power* to insert a clause of that sort which shall be operative, whether the instrument in which it is inserted, shall be operative as a will or not ? Suppose a man, having made a will, makes a second, in which, he says this: " I hereby revoke my former will, and I do so, whether this, my present will, has effect or not, for it is my wish, that, under no possible circumstances, shall that will stand, as, I would much rather die intestate, than die leaving such a will as that."   Now has the man the *power* to

insert such a clause as this, in his second will? I suppose, that nobody will deny him, the power. The whole law on the question, is contained in two sections of the statute of frauds; the sixth, and twenty-second; the former, relating to the revocation of wills of lands, the latter, to the revocation of wills of goods.

The former contains these words: "but all devises and bequests of lands and tenements, shall remain and continue in force," "unless the same be altered by some other will, or codicil, in writing, or other writing of the devisor, signed in the presence of three or four witnesses, declaring the same."

It is not said here, that this "other writing" may not be contained in a will.

The latter of the two sections, contains these words: "No will in writing concerning any goods," &c., "shall be repealed" "by any words, or will by word of mouth only, except the same be in the life time of the testator committed to writing, and, after the writing thereof, read unto the testator, and allowed by him, and proved to be so done by three witnesses at the least." *Cobb Dig.* 1128, 1129.

Nor is it said here, that the "words" to be "committed to writing," may not be "committed to writing" in a will. There is nothing, in either section, requiring more than that the revocation shall be in writing, shall be read to the writer, and be subscribed by as many as three witnesses. Therefore, there is nothing in either, requiring, that the revocatory writing shall not be inserted in a will.

A man has the *power*, then, to insert in his will, a revocation that shall be operative, though it turn out, that the will itself shall be inoperative.

Having the power, a man may, if he *pleases*, insert in his will a revocation that shall be operative independently of the will.

This being so, it follows that in every case, in which there are two wills of which, the latter contains a clause revoking all other wills, or contains testamentary dispositions repugnant to the testamentary dispositions contained in the earli-

Barksdale vs. Hopkins and wife et al.

lier, and the later fails as a will, the question whether the later revokes the earlier, will be a question of *intention.* *Sec.* 1. *Eccl. R.* 472, 120.

And being a question of intention, it will be a question for the jury. In the determination of this question in any case, the jury will have, of course, to look to all the facts of the case.

And, in estimating the value of the facts in any particular case, on this question, the jury will have to rely much, on their own good sense and discretion. In the nature of things, they will not be able to derive much aid from decisions. The facts of one case, especially when the case is of the kind in question, are not like the facts of another. Even when one fact in a case of this kind, is like one fact in another case of this kind, the rest of the facts in the one, will be different from the rest of the facts in the other. And a decision can determine the value of the facts of the case in which the decision is made, and the value of those facts only. And of them, the decision can determine only the aggregate, not the separate, value.

It may be supposed that there is one fact which all cases of this sort, will have in common; viz: the fact the later will, (or deed,) contains a general clause revocatory of former wills, or, contains dispositions, repugnant to the dispositions of the former will, may we not expect decisions to give us the value of this one fact, on this question of revocatory intention. Hardly, I think, because I think, that there is not a single case to be found, in which this was the *only* fact. In every case I think this fact has been accompanied by one, or more important auxilliary facts. And there have been cases, and more than one or two, in which the decision said, that, this fact though aided by strong auxiliary facts, did not avail to show a revocatory intention. There has been at least one case in which, the decision was that this fact aided by an auxiliary fact, or perhaps by two, did avail to show a

24

revocatory intention. But that case, nor the others tell us the separate value of this fact.

That case was the noted case of *Onions vs. Tyrer* 2 *Vern.* 742. In that case there was, 1st, this fact; 2dly, the fact, that the second will was like the first in every respect, except that it "merely changed a trustee; 3dly, there was, perhaps, what was deemed by the Court, to be the further fact, that the second will was not executed as the statute requires a revocation to be executed.

There was, then, for this decision to rest on, a foundation of at least two, and perhaps three facts. It is impossible then to get from the decision the estimate which it put on the first mentioned of the three facts.

And, in like manner, supposing that there were only the first and the second fact, in the case, the decision fails to tell us the separate value of this second fact; but, judging by other decisions we may say, that it must have estimated this fact very highly. "Lord Lincoln made his will by which he devised all his estates to the person to whom his title was to descend; and afterwards conceiving that he should marry a certain lady, though the lady never had any such intention, he conveyed his estate and lease and re-lease to trustees, in consideration of his intended marriage, to the use of himself and his heirs until the marriage should take effect, and then as to part for his intended wife, &c.; no marriage ever took effect; his Lordship died; and it was decreed that this conveyance operated as a revocation of the will; and the decree was affirmed in the House of Lords. It is said that the judges were equally divided in this case, and that all the Lords voted. Lord Mansfield has said of it, "the absurdity of Lord Lincoln's case is shocking;" however it is now law." *Com. Dig. Estates by devise, (F. 1.) note x.*

Now, in this case, the conveyance was repugnant to the will; therefore the conveyance carried within itself an implied revocation of the will. The conveyance failed. This was the first fact, which is like the first fact aforesaid, in *On-*

*ions vs. Tyrer*, but weaker. And, in this case, the conveyance was made in consideration alone of an intended marriage, and the marriage did not take place; and until the marriage, the conveyance was to the maker and " his heirs," in which respect, it was *similar to the will.* These were the facts answering to the second fact aforesaid, in *Onions vs. Tyrer;* viz; the similarity in all substantial respects of those two wills. And, certainly, if these facts were not as strong auxiliary facts, as that fact, they were yet very strong ones.

Judging then, by Lord Lincoln's case, we should have to say, that the value set by the Court, in *Onions vs. Tyrer*, on the fact of the similarity of the two wills, was very great. There are other cases by which, if we went, we should have to say the same thing. See *Com. Dig. and notes, supra.*

It seems to be undeniable that if there be two wills, bequeathing the same property, and the bequest in the second, is to a person who cannot take by reason of being under some disability, or, to a person who dies before the testator, by which the bequest lapses, the second will, though it fails, as a will, revokes the first. *Com. Dig. supra.*

In these views I express the *inclination* of my own mind, and I believe that of Judge Lumpkin's; he and I make the Court, Judge McDonald being kept from us by ill health.

The result they lead to is the overruling of the second objection of the propounder to the introduction of the offered evidence.

Was the record of the judgment annulling the paper of 1850, as a will, admissible?

One of the caveators, Mrs. Hopkins, was not a party to that judgment, or a person who had knowledge of the proceeding which resulted in the judgment, whilst it was pending.

She was one of the *heirs* of the testatrix, Mrs. Bunkley, and therefore, was in antagonism to the executor named in the annulled will. Therefore the executor did not in proceeding aforesaid, *represent* her.

These thing being so, the judgment did not bind her. See *Walker vs. Perryman, and others,* decided at this Term by this Court, and also *Newell vs. Weeks,* 1 *Eccl. Rep'ts,* 239.

[2.] This judgment not binding Mrs. Hopkins, was not admissible as against *her.* And whether, if not admissible against her, it was yet admissible as against the other two caveators, is a question which was not made, and, therefore, a question which we do not consider, but I must say for myself, that it is a question upon which, I entertain very great doubt. It seemed to be conceded, however, that if the judgment did not bind one, it did not bind any. We cannot say then, that we think, that the Court did wrong in excluding this record.

The main ground relied upon, to show, that its exclusion was wrong, was, that at the time when it was excluded, the propounder was cut off in the midst of his attempt to show, Mrs. Hopkins to have had knowledge of the proceeding in which the judgment was rendered. But we do not find, that this ground is sustained by the bill of exceptions.

The record being, as we think, inadmissible on the ground, that Mrs. Hopkins was not bound by it, it becomes unnecessary to notice the two other grounds relied upon, to show its inadmissibility.

And the *whole* record being inadmissible, it becomes also unnecessary to notice the exception to the decision, that the copy of the bill of exceptions made a part of the record.

There was no *proof* that the paper of 1850 was a matter of record in the Court of Ordinary. The proof to show that it was a matter of record there had been rejected. Besides, if it was a matter of record in that Court, there was nothing to show that the caveators, at least Mrs. Hopkins, had any connection with it as such matter of record.

We cannot say, that there was any abuse of discretion, in the Court's refusing the motion of the propounder for a continuance.

And what was it to him, that Mrs. Hopkins was dead if she was dead ? Was not that a matter for the caveators ?

Upon the whole, then, we affirm the decisions of the Court below.

Judgment affirmed.