LAWRENCE BOYLE *et al.*

*v.*

MARY BOYLE *et al.*

*Filed at Ottawa October 11, 1895.*

1. EVIDENCE—*declarations of testator's sister as to destruction of will.* Declarations of the sister of a testator, that she destroyed his will without his consent, are inadmissible upon the question of the revocation of such will.

2. SAME—*when testator is presumed to have destroyed his will.* A will will be presumed to have been destroyed by the testator himself, or at his direction, where he took it from the custodian with whom it had been for several months, and carried it away, and it could not be found after his death.

3. SAME—*weight of evidence as to destruction of will.* Proof that a testator took his will away from a custodian and that it could not be found after his death, and the testimony of six or seven disinterested witnesses to his declaration that he destroyed the will, will overcome evidence of his declaration that he had made a will in favor of a certain person, and of his sister that she destroyed it without his consent.

4. APPEALS AND ERRORS—*a party cannot complain, on appeal, of errors that do not affect him.* An appellant can only complain of errors that affect his own rights, and not such as affect only the rights of others who do not complain.

APPEAL from the Circuit Court of Grundy county; the Hon. DORRANCE DIBELL, Judge, presiding.

This was a petition filed in the county court of Grundy county by Lawrence Boyle, in which he alleged that Joseph·Boyle, a brother of petitioner, died on the 16th day of January, 1894, leaving him surviving petitioner, and Mary Boyle and Kate Houlehan, his only brother and sisters; that he was at the time of his death a single man, without issue, and without father or mother, and of about the age of fifty years; that at the time of his death he was the owner and possessed of certain valuable real estate in Grundy county and a large amount of personal property and money. It is also alleged that in the fall of 1893 Joseph Boyle executed his will at the office of one E. L. Clover, in Morris, Illinois; that the will was properly attested, and deposited with Clover for safe keeping; but that some time thereafter Mary Boyle, who was a single person and living with Joseph Boyle, by fraud and connivance obtained possession of said will, and after so obtaining the will she wrongfully, and without permission, authority or knowledge of Joseph Boyle, destroyed said will by burning the same. The petitioner prayed that letters of administration, which had previously been granted on the estate of Joseph Boyle, deceased, might be revoked and the will of the deceased admitted to probate. Upon filing the petition the county court issued a citation against the two heirs of the deceased, and also

against the children of Lawrence Boyle, who were lega-
tees under the alleged will of the deceased. The county
court, on the hearing, refused to admit the alleged will to
probate. The petitioner appealed to the circuit court,
where, on a full hearing of the evidence of the respective
parties, the circuit court denied probate of the alleged
will, and to reverse the latter judgment the petitioner
has appealed to this court.

It appears, upon an examination of the record, that
Joseph Boyle died in Grundy county January 16, 1894, the
owner of certain farm lands, upon which he lived at the
time of his death. He died unmarried and without issue.
At the time of his death, and for many years before, his
maiden sister, Mary Boyle, had lived with and kept house
for him. He was some sixty odd years of age and she
was much younger. He left surviving him this sister,
Mary, a widowed sister, Mrs. Catharine Houlehan, and a
brother, Lawrence Boyle, the petitioner, who had a num-
ber of sons and one or more daughters, all under age.
Shortly after the death of Joseph, Lawrence took out
letters of administration on his deceased brother's estate
as an intestate estate, and proceeded to settle the estate
as required by law.

BLAKE, KELLY & GOLDEN, for appellants:

The admissions on the part of the sister, Mary Boyle,
as to destruction of will, will estop her from at any time
thereafter denying them. *McCartney* v. *McMullen*, 38 Ill.
236; *Kinnear* v. *Mackey*, 85 id. 96; *People* v. *Brown*, 57 id. 435;
*International Bank* v. *Brown*, 80 id. 541; *Hill* v. *Blackwelder*,
113 id. 283; *Gillett* v. *Wiley*, 126 id. 310; *Casler* v. *Byers*, 129
id. 657.

It is highly improper to allow any declarations to be
shown to establish a revocation of the will. A will can
not be revoked in that manner. *Dickie* v. *Carter*, 42 Ill.
376; *Massey* v. *Huntington*, 118 id. 80.

There is not one particle of competent evidence introduced in this cause showing that Joseph Boyle, deceased, ever destroyed his will or had it destroyed legally. *Bennett* v. *Sherrod,* 3 Ired. 303; *Shultze* v. *Shultze,* 35 N. Y. 653; *Brown* v. *Brown,* 8 E. & B. 876; *Welsh* v. *Phillips,* 1 Mass. 299; Schouler on Wills. 401; *Dawson* v. *Smith,* 3 Houst. 335; *Tinder* v. *Burks,* 84 Ala. 53; *Walsh* v. *Phillips,* 1 Mo. 299.

S. C. STOUGH, for appellees:

Admissions of Mary testified to by Clover, Lawrence, his wife and their children, were inadmissible. *McMillan* v. *McDill,* 110 Ill. 47; *Campbell* v. *Campbell,* 138 id. 612.

The identical will offered for probate must be identified as the will of the testator by at least two witnesses. *Crowley* v. *Crowley,* 80 Ill. 469.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

It is conceded by the parties that on or about the fourth day of January, 1893, Joseph Boyle, in company with his brother, Lawrence Boyle, called ·at the office of E. L. Clover, in Morris, and there executed a will, in which he devised to his nephew, Lawrence Andrew Boyle, second son of Lawrence Boyle, upon certain terms and conditions therein named, all of his real estate. The will was witnessed by E. L. Clover and H. C. Gifford, and left with Clover for safe keeping. It is also established, beyond controversy, that some time in the summer or fall of 1893, Joseph, in company with his sister Mary, went to Clover's office and called for this will, and that Clover got it and handed it to Mary, and they carried it away The will was destroyed before the death of Joseph, and the only question in dispute is whether it was destroyed by the consent and direction of Joseph, or whether it was destroyed without his consent. Upon this question the evidence is somewhat conflicting, but the county court and the circuit court have both found, from the evidence, that

the will was destroyed by the direction of Joseph, and after a careful examination of the evidence we are inclined to think the judgment of the circuit court is sustained by a preponderance of the evidence.

It seems that Joseph did business with the Grundy County National Bank, and kept his notes and securities there.   Carr, the cashier, testified that in the summer of 1893 Joseph and his sister Mary were in town, and Joseph called at the bank and said he had made a will some time before, but he was going to destroy it and let the law take its course.   From other evidence in the record it seems to be quite well established that this conversation occurred on the day Joseph took the will out of the possession of Clover.   On or about the last of May, 1893, Joseph had a conversation with one Harvey, in regard to selling the land.   He said he heard Lawrence was going to stop him, and asked Harvey if he thought Lawrence could do so.   Joseph said: "I suppose because I made a lease to his boy he thinks he can stop my selling the place; but the first time I go to Morris I will break that lease."   A short time afterwards Harvey met Joseph again, and the latter then said he had broken the lease,— that he had told the lawyer to throw it into the stove. Lawrence's son never had any lease of the farm, and the lease alluded to was no doubt the will Joseph had made. Gilberry Specie testified that he called on Joseph in January before his death, and had a talk with him.   The witness asked Joseph if he didn't tell Mary to put the will in the stove, and he said yes.   George Sargeant testified that he had a conversation with Joseph, about the middle of June, in which he said he had made a will—had willed his property to Lawrence's child—but he was not satisfied with it, and that he was going to break it.   Afterwards he told witness he had done so.   James Sargeant testified that in July before Joseph died he had a conversation with him, in which he said the will was broken, and that Larry Boyle and his family would never get his

money.    Mrs. Matitson had a conversation with Joseph
in August, 1893, in which he said, in substance, that Mary
had the greater right to his property, and that he had
burned or was going to burn something.    Robert Houle-
han testified that three weeks before Joseph's death he
told witness he had broken his will and was not going to
make another.    Mrs. Houlehan, who had conveyed all her
interest in the property, testified that she had several
conversations with Joseph in regard to the destruction
of his will, and he told her that he gave the will to Mary
and told her to burn it.    The petitioner produced several
witnesses who testified that Joseph said to them he had
made a will and willed his property to Lawrence Boyle's
son, and several witnesses testified that Mary Boyle
stated that she had destroyed the will without the con-
sent of Joseph Boyle.

Under the rule laid down in *McMillan* v. *McDill*, 110 Ill.
47, and *Campbell* v. *Campbell*, 138 id. 612, the declarations
of Mary Boyle could not be regarded as competent evi-
dence.    But waiving all objections to the evidence, we
do not regard the evidence introduced by the petitioner
sufficient to overcome that introduced on behalf of the
defendants.    After Joseph Boyle had made his will, as
has been seen, he deposited it with Clover for safe keep-
ing.    It remained in his custody for five or six months,
when the testator, as appears, of his own free will called
on Clover for the will and carried it away.    His sister
Mary was with him, it is true, but he was the person who
alone controlled the custody of the paper.    The will was
thus taken into his custody and carried off, and after his
death it could not be found.    From these facts but one
presumption can arise, and that is, that Joseph destroyed
the will himself or directed it to be destroyed.    When this
presumption is fortified by the testimony of six or seven
disinterested witnesses, who testify that they talked with
Joseph before his death, and he deliberately said that he
had destroyed the will, or language to that effect, the evi-

dence so clearly preponderates in favor of the judgment, after giving due weight to the testimony introduced by petitioner, that we perceive no ground for disturbing the judgment.

It is also claimed that the court erred in failing to appoint a guardian *ad litem* for certain minor children of Lawrence Boyle. Whether the court erred in this regard it will not be necessary here to determine. They are not here complaining. The petitioner, Lawrence Boyle, is the only person before the court complaining, and he can only rely upon errors that affect his rights, and not the rights of others.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*