JOSEPH WILLIAMS ET AL., APPELLANTS, V. JOSEPH H. MILES
ET AL., APPELLEES.*

FILED APRIL 9, 1903.   No. 11,630.

1. Will in Custody of Testator: NOT FOUND AFTER HIS DEATH: PRE-
SUMPTION. Where a will is shown to have been made and left in
the custody of the testator, if it can not be found after his death
the presumption is that the testator destroyed it *animo revocandi*.

2. Presumption of Fact Only. But this is a presumption of fact only.
It may be overcome by evidence, circumstantial or otherwise, to
the contrary; and declarations of the testator may be shown for
this purpose.

3. Destruction of Subsequent Will Revoking Former by Implication:
EFFECT. If the testator destroys a subsequent will revoking a
former one by implication, such act, of itself, will not operate to
revive the former will.

4. Intention of Testator. Whether the former will is revived in such
a case depends upon the intention of the testator, which is to be
deduced from all the circumstances.

5. Common Law of England: TERM AS USED IN THE STATUTE. The
term "common law of England," as used in chapter 15a, Com-
piled Statutes, refers to that general system of law which pre-
vails in England, and in most of the United States by derivation
from England, as distinguished from the Roman or Civil law
system. Hence the statute does not require adherence to the
decisions of the English common-law courts prior to the Revolu-
tion in case this court considers subsequent decisions, either in
England or America, better expositions of the general principles
of that system.

6. Subsequent Will: REVOCATION OF PRIOR WILL: DEFEAT OF PROBATE.
A subsequent will which has the effect of revoking a prior will
may be shown for the purpose of defeating probate of such prior
will, although by reason of its loss or destruction the exact dis-
positions made therein can not be shown and are incapable of
execution. The revocation will be effectual, even though in other
respects the will can not be carried out.

7. Lost Will: PROOF OF CONTENTS: DECLARATIONS OF TESTATOR. Al-
though the contents of a lost will can not be proved solely by the
declarations of the testator, such declarations are admissible to
prove the existence of the will.

8. Heirs: COMPETENCY AS WITNESSES IN WILL CONTEST. Persons who

* Rehearing denied. See opinion, p. 479, *post.*

would take as heirs or next of kin in case of intestacy are not disqualified, under section 329, Code of Civil Procedure, from testifying as to transactions and conversations with the deceased in a contest over an alleged will. *McCoy v. Conrad*, 64 Neb. 150, followed.

9. Evidence as to Declarations of Testator. In such cases evidence as to declarations of the testator should be scrutinized carefully and weighed cautiously.

10. Will: EXECUTION. If the instrument is in fact signed, attested and subscribed as required by the statute, a formal attestation clause is not necessary.

11. ———: ———: SUBSCRIBING WITNESSES. Hence the subscribing witnesses to a lost will may testify that t he testator signed and they witnessed and subscribed in the required manner, without proving that there was an attestation clause, or establishing the contents thereof.

12. Revocation. A subsequent will may have the effect of revoking a prior will, either by reason of an express clause of revocation, or of an inconsistent disposition of the testator's property.

13. Revocation by Implication. Unless the subsequent will expressly revokes the former one, such former will is only revoked so far as it is inconsistent with the later; a complete revocation will not result unless the general tenor of the later will shows clearly that the testator so intended, or the two instruments are so plainly inconsistent as to be incapable of standing together.

14. ———: NOT FAVORED. Courts do not favor revocation by implication, and incline to such a construction as will give effect to both instruments.

15. ———: FACT OF MAKING SUBSEQUENT WILL WITHOUT PROOF OF CONTENTS. The fact that a subsequent will was made is not sufficient, of itself, and without some proof of its actual contents, to show revocation of a former will.

16. Parol Evidence. Parol evidence to show that a former will was revoked by implication by reason of a subsequent will, which can not be found, must be clear, unequivocal and convincing.

APPEAL from the district court for Richardson county: JOHN R. THOMPSON, DISTRICT JUDGE. *Affirmed.*

*Jefferson H. Broady, Arthur J. Weaver, John L. Webster, John H. Atwood* and *Reavis & Reavis,* for appellants.

*Francis Martin, Edwin Falloon* and *Clarence Gillespie, contra.*

POUND, C.

The general purpose and nature of this controversy are stated in the opinion of the court on another branch of the cause. *Williams v. Miles,* 63 Neb. 859. It will be sufficient to say, for the purposes of the present opinion, that the decree appealed from was rendered in a suit begun originally in the county court of Richardson county for the purpose, among other things, of having an order admitting a certain instrument to probate as the last will of Stephen B. Miles vacated and set aside. Stephen B. Miles died at Falls City, in this state, in 1898, leaving surviving him Joseph H. Miles, one of the appellees, and Samuel A. Miles, one of the appellants, his sons, and a number of descendants of two deceased daughters. In the year 1888, he had made a will at Rulo in Richardson county, in which he gave substantially his entire estate, amounting at the time of his death to upwards of $1,000,-000, to Joseph H. Miles, excluding Samuel A. Miles, the issue of his two daughters, and many others who had claims upon his bounty. During the period intervening between the execution of this will and his death, he had ceased to take an active hand in business, and lived mostly at hotels in St. Louis, Missouri, or at Falls City. After his death, Joseph H. Miles, who was present when the will known as the Rulo will was executed, in 1888, and was acquainted with its contents, made an extensive search in every place in which papers of the deceased were known to be or were likely to be found, for the purpose of ascertaining whether there was a will. As a result of this search, he testifies that he found the Rulo will in an unlocked valise in a room in a hotel at Falls City, which had been occupied by the deceased, under circumstances which, to say the least, are somewhat extraordinary. He presented the will to the county court of Richardson county and procured its probate. The appellants' case is that in 1897 the testator executed a new will at a hotel in St. Louis, where he was in the habit of spending his winters, which

34

had the effect of revoking the Rulo will; that Joseph H. Miles learned of the existence of this will while searching for papers left by his father; and that he fraudulently concealed and withheld his knowledge thereof, and by so doing procured the will of which he was the beneficiary to be probated. It is also charged that he obtained possession of the will executed at St. Louis and has retained the same, and concealed its contents from the plaintiffs, with the intent and purpose of cheating and defrauding them, the heirs at law, and other devisees and legatees of the testator. The later will, if there was one, has not been found.

The evidence with reference to the execution of what may be called the St. Louis will consists of the testimony of two witnesses, the manager and clerk of the hotel in St. Louis, who appear to have been well acquainted with the testator. They testify that within a few days after a conversation which one of them had with the testator regarding his will, the testator stated that he was going to make his will at once, and apparently went out of the hotel for that purpose; that several hours thereafter he came to the office in the hotel and stated that he had made a will; that either the next day or within two or three days, they were summoned to the testator's room, where they found him with some document drawn upon legal-cap paper before him; that the testator said to them, "Gentlemen, I want you to witness the signature of my will"; and that he thereupon took a pen, and, saying "This is my last will and I want you to witness the signature to it," signed his name, and procured the witnesses to subscribe theirs also. The testimony of these witnesses is very clear and circumstantial as to the execution of the instrument, but they do not claim to know anything of what the paper contained, further than the statement of the testator that it was his will. There is, however, not a little evidence as to declarations of the testator tending to show that he had made dispositions of his property inconsistent with the terms of the Rulo will, and there is

much circumstantial evidence to indicate substantial reasons moving him so to do. The trial court found for the defendants, and rendered a decree accordingly, which is now appealed from.

On behalf of the appellees it is urged that, assuming the St. Louis will has been proved, since the testimony by which it is shown establishes that the testator retained custody of or had ready access to it, and it could not be found at his death, we must take it to have been destroyed by the testator with the purpose of revoking it, and that such revocation, in the absence of a contrary statutory provision, and by virtue of chapter 15a, Compiled Statutes (Annotated Statutes, 6950) would have the effect of reviving the prior will. Each of these propositions requires some qualification. Where a will is shown to have been made and left in the custody of the testator, if it can not be found after his death, the presumption is that he destroyed it *animo revocandi.* 1 Jarman, Wills (5th ed.), *133; *Boyle v. Boyle,* 158 Ill. 228, 42 N. E. 140; *Collyer v. Collyer,* 110 N. Y. 481; *Behrens v. Behrens,* 47 Ohio St. 323, 25 N E. 209; *Gardner v. Gardner,* 177 Pa. St. 218, 35 Atl. 558. If the will is traced out of the testator's custody, on the other hand, the burden is on him who asserts a revocation to show that it came once more under the testator's control, or was destroyed by his direction. 1 Jarman, Wills, *133. In such cases if the person into whose hands the will is traced had an interest in procuring its destruction, some courts have suggested that they would go very far in presumptions as to the contents of the lost will and the mode of its disappearance. *Chisholm v. Ben,* 7 B. Mon. (Ky.) 408. We need not examine this subject in the case at bar. Although there is some circumstantial evidence which might create a suspicion that the St. Louis will came into the bank at Falls City, where Joseph H. Miles would have had access to it, we do not think there is enough to call for application of the authorities referred to, even if we were prepared to follow them. *Clark v. Turner,* 50 Neb. 290, 299; *Collyer v. Collyer,* 110 N. Y.

481, 486. But if we take it that the St. Louis will, assuming that there was one, remained in the custody of the testator, it does not follow that such will must be regarded as revoked. The presumption of destruction *animo revocandi* is one of fact only. It governs in the absence of circumstances tending to a different conclusion, but may be overcome by circumstantial or other evidence to the contrary. 1 Jarman, Wills (5th ed.), *133; *Legare v. Ashe,* 1 Bay (S. Car.) 464; *Davis v. Sigourney,* 8 Met. (Mass.) 487; *Minkler v. Minkler,* 14 Vt. 125; *Gardner v. Gardner,* 177 Pa. St. 218. And declarations of the testator subsequent to the execution of the will, are admissible for this purpose. *Lawyer v. Smith,* 8 Mich. 411; *Harring v. Allen,* 25 Mich. 505; *McDonald v. McDonald,* 142 Ind. 55, 41 N. E. 336; *Boyle v. Boyle,* 158 Ill. 228, 42 N. E. 140; *Behrens v. Behrens,* 47 Ohio St. 323, 25 N. E. 209, 21 Am. St. Rep. 820; *Gardner v. Gardner, supra.* In the analogous case of a will found among the testator's papers in a mutilated condition, declarations of the testator manifesting good will toward the beneficiaries, showing a purpose of adhering to its provisions, or that he is entirely satisfied therewith, will be received to rebut the presumption of revocation. 1 Underhill, Wills, sec. 232. In the case at bar, the declarations of the testator indicating that he had made and was adhering to dispositions not to be found in the Rulo will are numerous and well authenticated. Moreover, there are circumstances in evidence which would indicate that, in case there was a will subsequent to the Rulo will, it represented the final intentions of the testator. But even if we held that the St. Louis will, if there was one, was destroyed *animo revocandi,* would it follow that a former will, revoked by the St. Louis will, was revived by destruction of the latter? This raises a question of some difficulty, which has given rise to no little discussion.

Our statute of wills follows the Massachusetts act of 1836, which, as to execution and revocation, is modeled on the statue of frauds. We have not adopted a modern

statute along the lines of the English statute of 1837. Hence the question must be settled in this state without reference to the later statutes, and decisions thereunder, except as they indicate a sound policy, in accord with the general objects and purposes of every statute on the subject. If the first will is destroyed, and a subsequent will is revoked or canceled, it has never been asserted that the first will is revived. But if the first will remains in existence, and a second will, which operated to revoke it, is afterwards revoked or canceled, without execution of a new one, there has been much divergence of opinion. Lord Mansfield announced a rule, which was followed by the common-law courts, when questions as to wills disposing of real property came before them, to the effect that if the first will is preserved, and a subsequent will, revoking it expressly or by implication, is destroyed or canceled, the revocation is repealed, and the original will revived and continued in force by virtue of these circumstances. *Harwood v. Goodright,* 1 Cowp. (Eng.) 87, 91; *Goodright v. Glazier,* 4 Burr (Eng.) 2512. On the other hand, the ecclesiastical courts, which had jurisdiction over wills disposing of personalty, and from whose decisions our law of probate and administration is derived in large part, held to a more flexible rule; endeavoring in each case to ascertain the testator's intention, and making that intention the criterion. In a leading case, the doctrine of those courts was stated thus: "The legal presumption is neither adverse to, nor in favor of, the revival of a former uncanceled, upon the cancelation of a later revocatory will. Having furnished this principle, the law withdraws altogether; and leaves the question, as one of intention purely, and open to a decision either way, solely according to facts and circumstances." *Usticke v. Bawden,* 2 Add. Ecc. (Eng.) 116. Counsel urge that chapter 15a, Compiled Statutes (Annotated Statutes, 6950), which makes the common law of England the rule of decision in all cases not governed by constitution or statutes, so far as applicable, requires us to follow the rule an-

nounced by Lord Mansfield, and that the decisions of common-law courts in England prior to the Revolution are controlling, as between such decisions and subsequent English authorities. We are unable to assent to this proposition.

What is the meaning of the term "common law of England," as used in chapter 15a, Compiled Statutes? Does it mean the common law as it stood at the time of the Declaration of Independence, or as it stood when our statute was enacted, or are we to understand the common-law system, in its entirety, including all judicial improvements and modifications in this country and in England, to the present time, so far as applicable to our conditions? We can not think, and we do not believe this court has ever understood, that the legislature intended to petrify the common law, as embodied in judicial decisions at any one time, and set it up in such inflexible form as a rule of decision. The theory of our system is that the law consists, not in the actual rules enforced by decisions of the courts at any one time, but the principles from which those rules flow; that old principles are applied to new cases, and the rules resulting from such application are modified from time to time as changed conditions and new states of fact require. *Rensselaer Glass Factory v. Reid,* 5 Cow. (N. Y.) 587. "We may look to American as well as English books, and to American as well as English jurists, to ascertain what this law is, for neither the opinions nor precedents of judges can be said, with strict propriety, to be the law—they are only evidence of law." *Forbes v. Scannell,* 13 Cal. 242, 285. On this ground it was held, in *Sayward v. Carlson,* 1 Wash. 29, 23 Pac. 830, that a statutory provision in Washington, making the common law of England the rule of decision in all courts, did not confine the courts to the decisions of the English courts, and of those American courts which have followed them closely, for the interpretation of the law. Such has been the understanding of this court from the beginning. What Sir Frederick Pollock has called

"the immemorial and yet freshly growing fabric of the common law," is to be our guide, not the decisions of any particular courts, at any particular period.   The term "common law of England," as used in the statute, refers to that general system of law which prevails in England, and in most of the United States by derivation from England, as distinguished from the Roman or Civil Law system, which was in force in this territory prior to the Louisiana purchase.   Hence the statute does not require adherence to the decisions of the English common-law courts prior to the Revolution, in case this court considers subsequent decisions, either in England or America, better expositions of the general principles of that system.

If, as between the rule of the old common-law courts and the rule of the English ecclesiastical courts, we are not required by statute to follow the former, we think the latter, on principle, greatly to be preferred; and it has the support of the weight of recent authority in America. A distinction was suggested at an early period between a will which revokes the former will expressly, and one which so operates by implication only.   Leaving the question somewhat in doubt as to the latter case, the rule has been generally and vigorously assailed as to the former. 1 Powell, Devises, 528; 4 Kent, Commentaries, 531; Randolph & Talcott's note to 1 Jarman, Wills, *193; *Barksdale v. Hopkins,* 23 Ga. 332; *Beaumont v. Keim,* 50 Mo. 28; *Colvin v. Warford,* 20 Md. 357; *Scott v. Fink,* 45 Mich. 241; *Cheever v. North,* 106 Mich. 390, 64 N. W. 455.   But the courts are by no means agreed on this distinction, and it has been considered as having no more force than to affect the presumption, if any there is.   *Pickens v. Davis,* 134 Mass. 252, 254; Schouler, Wills, sec. 413.   A few jurisdictions adhere to the rule as stated by Lord Mansfield.   *Taylor v. Taylor,* 2 Nott & McC. (S. Car.) 482; *Randall v. Beatty,* 31 N. J. Eq. 643; *Peck's Appeal,* 50 Conn. 562.   But the strong tendency in the United States is to follow the rule of the English ecclesiastical courts, and hold that if the testator destroys a subsequent will,

revoking a former one either expressly or by implication, such act, of itself, will not revive the former will. *In re Gould's Will,* 72 Vt. 316, 47 Atl. 1082; *McClure v. McClure,* 86 Tenn. 173, 6 S. W. 44; *Harwell v. Lively,* 30 Ga. 315; *Bohanon v. Walcot,* 1 How. (Miss.) 336; 1 Woerner, Probate and Administration, sec. 51. Following the English act of 1837, the statutes, wherever this subject has been dealt with by legislation, are all against the doctrine of constructive revival of the prior will. Hence we may well regard Lord Mansfield's rule as disapproved, and the doctrine of the ecclesiastical courts as vindicated. Preferring the latter, we think the rule should be to look to the intention of the testator in every case. Whether the former will is revived, depends upon his intention, which is to be deduced from all the circumstances. *Williams v. Williams,* 142 Mass. 515. So far as there is a presumption, it would seem that the presumption ought to be against revivor. *In re Gould's Will, supra,* p. 320; Schouler, Wills, sec. 413. Without regard to any presumption, however, we find nothing in the evidence sufficient to indicate an intention to revive the earlier will, if it had been revoked, and there is much to show that no such intention existed.

It follows that we are brought inevitably to the questions whether execution of the St. Louis will has been shown sufficiently, and, if so, whether the evidence shows sufficiently that it revoked the former will, expressly or by implication. Before taking up these questions, however, certain preliminary objections going to the mode of proof must be disposed of.

It is urged on behalf of the appellees that it is not sufficient to show a subsequent will revoking the instrument probated, but that the contents of such will must be established; that declarations of the testator are not admissible to prove the later will; that persons who would take as heirs or next of kin in case of intestacy, or as beneficiaries under the subsequent will, are not competent witnesses to transactions and conversations with the deceased; and

that appellants must fail because they have not proved
an attestation clause nor established the contents thereof.
As will be seen presently, the first and second of these ob-
jections have other phases, in which they are well taken.
It must be shown not merely that there was another will,
but also that it contained a revocation clause, or else its
contents must be established so as to demonstrate an in-
consistency between the instruments requiring the court
to hold the one revoked by the other by implication. And
the contents, whether with respect to the revocation clause,
or the general provisions from which revocation is to
be implied, can not be shown solely by declarations of the
testator. But further than this we can not accept coun-
sel's contentions. A subsequent will which has the effect
of revoking a prior will may be shown for the purpose of
defeating probate of such prior will, although, by reason
of its loss or destruction, the exact dispositions made
therein can not be shown, and are incapable of execution.
It is enough to prove that the lost will revoked the former
one. If that much is shown, the contents need not be
proved further. *Brown v. Brown,* 8 Ell. & Bl. (Eng.) 876;
*Nelson v. McGiffert,* 3 Barb. Ch. (N. Y.) 158; *Barksdale
v. Hopkins,* 23 Ga. 332. The revocation will be effectual,
even though in other respects the will can not be carried
out. *In re Cunningham,* 38 Minn. 169, 36 N. W. 269;
*Stevens v. Hope,* 52 Mich. 65, 17 N. W. 698. If the
later will was destroyed by the testator, intending to re-
voke it, yet he may have intended to die intestate. *Legare
v. Ashe,* 1 Bay (S. Car.) 464; Schouler, Wills, sec. 412.
Consequently proof is admitted to show execution of the
subsequent will, and that it revoked the former, and this
proof may be by parol. *Brown v. Brown, supra.* But the
burden is upon those who attack the earlier will to show
that it was revoked; and, if they do not establish an ex-
press revocation clause, conjecture or probabilities are not
sufficient; nor will such words as "this is my last will"
have any weight whatever. 1 Jarman, Wills, *174;
*Leslie v. Leslie,* 6 Ir. R. Eq. 332. As to the declarations of

the testator, we must distinguish between their competency and their sufficiency, when standing alone, to prove the contents of the lost will. The contents of a lost will can not be proved solely by the declarations of the testator. *Clark v. Turner*, 50 Neb. 290. But in the same case, it was held that such declarations are admissible to corroborate more direct evidence of the contents of the will, and, of themselves, are competent to prove its existence. The court said (p. 298) : "We think all the cases hold that the declarations of a testator may be received in evidence to prove the existence of a will and in proof of issues relating to the testator's competency or to undue influence, but it has been doubted whether such declarations may be received to establish a revocation. It follows that in all proceedings to probate a lost will, such declarations are admissible in evidence because the existence of the will must necessarily be established by some such indirect method. The declarations having been admitted for that purpose their sufficiency to establish the contents of the will is another question." The suggestion of doubt whether such declarations may be received to establish a revocation has reference to the fact that a mere intention to revoke is not sufficient, unless carried out in some one of the forms required by the statute. If a new will is made, without an express revocation clause, revocation is a question of intention, to be determined from the instruments themselves and from all the circumstances. If the subsequent will is lost, then, its tenor being shown, declarations are admissible in corroboration. But an intention to revoke in some other manner must be manifested by some act prescribed in the statute, and performed as the statute requires. *Belshaw v. Chitwood*, 141 Ind. 377, 40 N. E. 908; *Boylan v. Meeker*, 28 N. J. Law, 274; *McCune v. House*, 8 Ohio 144, 31 Am. Dec. 438; *Brown v. Thorndike*, 15 Pick. (Mass.) 388. The court evidently had this rule in mind, in *Clark v. Turner*, and was not speaking with respect to such a question as that now before us. As to the competency of the testimony of those witnesses who would take

but for the Rulo will, the case of *McCoy v. Conrad,* 64 Neb. 150, is decisive.  In that case it was held that persons who would take as heirs or next of kin in case of intestacy are not disqualified, under section 239, Code of Civil Procedure, from testifying as to transactions and conversations with the deceased in a contest over an alleged will. We think, however, that in such cases evidence as to declarations of the testator should be scrutinized carefully and weighed cautiously.  *Clark v. Turner,* 50 Neb. 290; 1 Greenleaf, Evidence, sec. 200.  As to the attestation clause, if the instrument was in fact signed, attested, and subscribed, as required by the statute, a formal clause reciting the details of the transaction was not necessary.  The statute does not require an attestation clause, but only requires that the will be subscribed by the testator, and attested and subscribed in his presence by two or more credible witnesses.  The necessary facts may be proved by the subscribing witnesses, although the attestation clause is omitted.  *Robinson v. Brewster,* 140 Ill. 649, 656, 30 N. E. 683; *Berberet v. Berberet,* 131 Mo. 399, 33 S. W. 61; *In re Lewis's Will,* 51 Wis. 101, 113, 7 N. W. 829; *Ela v. Edwards,* 16 Gray (Mass.) 91; *More v. More,* 92 Ill. App. 465.  Hence the subscribing witnesses to a lost will may testify that the testator signed and they witnessed and subscribed in the required manner, without proving that there was an attestation clause or establishing the contents thereof.

Without going over the details, we may say that the evidence produces a strong conviction that a will of some sort was made at St. Louis.  There is not only the testimony of the two subscribing witnesses, but a very considerable mass of circumstantial evidence.  Moreover, the declarations of the testator are well authenticated and circumstantial.  Taking all these matters into account, and bearing in mind that the apparent injustice of the disposition made in the instrument admitted to probate, the suspicious character of many things connected with the finding of the Rulo will, and the disposition of the testator

to make wills, as shown in evidence, if the question were merely whether a subsequent will was executed, we should hesitate to say that the decree could stand. The testimony of several of the most important witnesses was taken by deposition, and, as the trial court neither saw nor heard these witnesses, the ordinary rule that a decree based on conflicting testimony will be affirmed does not apply with full force. *Gibson v. Hammang,* 63 Neb. 349; *Delorac v. Conna,* 29 Neb. 791, 811. But the appellants have much more to do than merely to prove that a subsequent will was executed at St. Louis in the prescribed legal form. They must show that the St. Louis will revoked the former will, and to that extent must prove its contents.

A subsequent will may have the effect of revoking a prior will, either by reason of an express clause of revocation, or of an inconsistent disposition of the testator's property. 1 Jarman, Wills, *172. Hence, to show that the Rulo will was superseded, it would be necessary to prove that the later instrument revoked it expressly, or else to show that the contents of the later instrument were such as to revoke it by implication. There is no proof of an express revocation clause. To show revocation by implication requires more detailed evidence as to the contents of the lost will, for, unless the subsequent will expressly revokes the former one, such former will is only revoked so far as it is inconsistent with the later. 1 Jarman, Wills, *175. The governing principle is the intention of the testator. It does not follow from the fact of a new will that full and entire revocation was intended; the purpose may have been to make supplemental provisions, consistent with the former will in whole or in part, to dispose of other property, or to amend and alter the prior dispositions only. Hence a complete revocation by implication will not result unless the general tenor of the later will shows clearly that the testator so intended, or the two instruments are so plainly inconsistent as to be incapable of standing together. *Brant v. Wilson,* 8 Cow. (N. Y.) 56; *Smith v. McChesney,* 15 N. J. Eq. 359; *In re Venable's*

*Will,* 127 N. Car. 344, 37 S. E. 465.  Courts do not favor revocation by implication, and incline to such a construction as will give effect to both instruments.  Schouler, Wills, sec. 407; 1 Underhill, Wills, sec. 251.  There are cases where, from the whole instrument, the court is able to say that the later was intended as an independent and final disposition of the testator's property.  1 Jarman, Wills, *175. /But in order that a court may do this, with assurance, it must have the later instrument before it, so that the testator's language may be fully and accurately apprehended.  Hence it was held in a number of early cases that it was not enough to find the existence of a subsequent will, but it must be found that the subsequent will differed from the former will, claimed to have been revoked, and that the nature of the difference must be found also./ *Scymor v. Northwortly,* Hard. (Eng.) 374; *Goodright v. Harwood,* 3 Wils. (Eng.) 497; *Harwood v. Goodright,* 1 Cowp. (Eng.) 87, 89, 91.  This rule has been adhered to.  We may regard it as well settled that the mere fact that a subsequent will was made is not sufficient, of itself, and without some proof of its actual contents, to show revocation of a former will.  1 Williams, Executors, 162, 166; *Nelson v McGiffert,* 3 Barb. Ch. (N. Y.) 158; *Lane v. Hill,* 68 N. H. 275, 44 Atl. 393./ We think the same considerations justify the requirement that the contents of the lost will, to such extent as is necessary to establish a revocation by implication, be clearly shown.  Where parol evidence is relied on to show that a will in existence was revoked by implication by one which can not be found, such evidence should be clear, unequivocal, and convincing, since a construction of the two, if both were actually before the court, might harmonize in whole or in part what, from the relation of those who speak from recollection of matters more or less distant in time, would appear inconsistent. *Southworth v. Adams,* 11 Biss. (U. S. C. C.) 256, Fed. Cas. No. 13,194; *Grant v. Grant,* 1 Sandf. Ch. (N. Y.) 235; *Newell v. Homer,* 120 Mass. 277.  In somewhat analogous cases, where a deed absolute is sought to

be proved a mortgage, or a deed is sought to be reformed, or a trust established contrary to the terms of a written instrument, by parol, this court has uniformly insisted that the evidence be clear and convincing. *Doane v. Dunham*, 64 Neb. 135, and cases cited; *Topping v. Jeanette*, 64 Neb. 834; *Columbia Nat. Bank v. Baldwin*, 64 Neb. 732. This requirement is the more salutary where the evidence goes largely to declarations of a testator. In *Clark v. Turner*, 50 Neb. 290, 302, the court say: "On no subject perhaps are statutes so strict in requiring a writing executed and attested in certain forms as in the case of wills, and while it is firmly established that a lost will may be proved by secondary evidence, the courts have always required such evidence to be direct, clear and convincing. As said by the supreme court of the United States in *Lea v. Polk County Copper Co.*, 21 How. 493, 'the courts of justice lend a very unwilling ear to statements of what dead men have said.' Such evidence is always considered dangerous and subject to the closest scrutiny."

In view of the principles last discussed, we think the appellants have failed to show sufficiently that the Rulo will was revoked. Declarations of the testator alone will not suffice to show that the St. Louis will had that effect by implication, since, without showing the contents of that will, such a revocation can not be established. But, as held in *Clark v. Turner, supra,* the testimony of the subscribing witnesses in this case, except so far as they testify that the testator signed a paper, and they witnessed it in his presence and at his request, amounts only to evidence of his declaration that the paper was his will. The other testimony consists of declarations of the testator as to what he had done for or had left supposed beneficiaries of the lost will, or what would be their circumstances after his death. Beyond the declarations of the testator, which may supplement but can not entirely replace more direct proof, there is no such clear, unequivocal and convincing evidence of the contents of the will as the

law must and does require. As there is no proof of an express revocation clause, it follows that the finding of the trial court is right.

We therefore recommend that the decree be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

On motion to modify former opinion, the following opinion was filed July 3, 1903. *Motion denied:*

1. **Will:** EVIDENCE: DECLARATION OF TESTATOR. Declarations of the testator are competent evidence on an issue whether a will was made, but will not suffice, of themselves, to prove its contents.

2. **Commissioners' Opinions.** Where opinions are prepared by commissioners, they must be permitted, necessarily, to state their reasons in their own way, without binding the court to all that is said *arguendo*, even though it concurs in the conclusions of law and express findings of fact.

3. ———: MATTERS NOT ESSENTIAL. Opinions expressed by the commissioners on matters not essential to the decision, while properly set forth to advise counsel that their arguments in briefs or at the hearing have been duly considered, do not become necessarily the law of the case, and will not preclude further investigation of such points, should they come before the court once more.

POUND, C.

The greater portion of the brief and of the oral argument in support of this motion is based upon a failure to distinguish between the competency and admissibility of evidence, on the one hand, and its probative force or sufficiency to establish the fact in controversy, on the other hand. We did not state that a will could be shown solely by declarations of the testator. What we did say, and now adhere to, is quite another proposition, namely, that declarations of the testator are competent evidence on an issue whether a will was made. In *Clark v. Turner*, 50 Neb. 290, 298, this court had said already: "We think

all the cases hold that the declarations of a testator may be received in evidence to prove the existence of a will." We quoted this language, and endeavored to make the point still more clear by saying: "As to the declarations of the testator, we must distinguish between their competency and their sufficiency, when standing alone, to prove the contents of the lost will." We perceive no ground for holding that the evidence as to execution of the alleged will made at St. Louis was incompetent. Counsel argued strenuously at the original hearing that this evidence should not have been received or considered, and the opinion sought to meet this contention.

Appellees complain of a number of statements made incidentally or *arguèndo* in the course of the opinion. In particular they object to certain remarks which conceded the suspicious or extraordinary character of some of the circumstances urged upon us by appellant. We held that the evidence sustained the contentions of appellees on these points. But it does not appear wherein there was any impropriety in recognizing the force of the matters urged upon our attention by appellants. In justice to them we could do no less than state their position and concede the full weight of their case. This is one of the incidents of litigation. To suppress these features of the case in deference to the feelings of one party would be to deprive the other of his right to know precisely how and why he had failed. It is contended that some of the remarks in question may prejudice other or further litigation between the same parties. Here, again, however, were we to remain silent entirely, the appellants would have just ground of complaint. If we merely recommended a judgment of affirmance, without stating fully the views we entertained, by reason of which we were moved to make such a recommendation, the grounds thereof would be matter of speculation and conjecture, and erroneous constructions of the judgment might prejudice appellants much more than the appellees may be injured by any incidental statements in the opinion. Moreover, no such effects as

counsel appear to apprehend are involved in such remarks. It was laid down at one time that the court was not bound beyond the points stated in the syllabus to its opinion. *Holliday v. Brown,* 34 Neb. 232.  And, while the court would probably not state the proposition so baldly at present, the point made in that case is unquestionably well taken, namely, that each member of the court, in the body of his opinion, must be permitted necessarily to state his reasons in his own way, without binding his colleagues to all that is said *arguendo,* althought they concur in the conclusions of law and express findings of fact.  This must be true even more of opinions prepared by commissioners. The three commissioners who sat in the case at bar, came to certain conclusions, by reason whereof they recommended a judgment of affirmance.  The court approved their conclusions and adopted their recommendation. What they may have thought on matters not essential to the decision, while properly set forth to advise counsel and parties that the arguments urged in the briefs and at the time of hearing were duly considered, has not become the law of the case, and will not preclude further investigation of such points, should they come before the court once more in another proceeding or on another record.  *Lane v. Starkey,* 20 Neb. 586.; *Missouri P. R. Co. v. Fox,* 60 Neb. 531; *State v. Paxton,* 65 Neb. 110.

We therefore recommend that the motion be denied.

BARNES and OLDHAM, CC., concur.

By the Court:  For the reasons stated in the foregoing opinion, it is ordered that the motion be denied.

REHEARING DENIED.