JOSEPH WILLIAMS ET AL., APPELLANTS, V. JOSEPH H. MILES
ET AL., APPELLEES.*

FILED FEBRUARY 9, 1905. No. 13,599.

1. **Law of Case.** The decision of a law question by this court upon
the first appeal of a cause will ordinarily be adhered to upon
a second appeal as the law of the case. No exception to this
rule will be made when the question so determined is one of
practice, and the parties have been guided by such decision in
the second trial of the case.

2. **New Trial.** When a proceeding is begun in the county court, and
appealed to the district court and there tried, an application for
a new trial on the ground of newly discovered evidence can be
made only in the district court.

3. **Appeal.** Under the statute allowing appeals "in actions in equity,"
any order or proceeding in such action that may be brought
to this court for review may be brought by appeal.

4. **New Trial.** In an action in equity to vacate a judgment at law,
the district court may grant a new trial for the same reasons
and upon the same condition that it may in other equity causes.

5. ———: LIMITATION. In an action tried in the district court upon
appeal from the county court, the time in which an application
for a new trial may be filed runs from the date of the judgment
of the district court. This is so though the action or proceeding
is one of which the county court has exclusive original juris-
diction.

6. ———: DILIGENCE. To obtain a new trial on the ground of newly
discovered evidence, it must be made to appear that the party
applying has used due diligence to obtain the evidence and
present the same at the trial. The pleadings and evidence
in this case show such diligence.

7. ———: SHOWING. In such application for a new trial, it must
appear that the new evidence is of so controlling a nature as
to probably change the result of the former trial. If the party
applying for the new trial failed upon the former trial for want
of sufficient proof of an essential fact which the new evidence
strongly tends to prove, it sufficiently appears that such evidence
would probably change the result.

8. **Lost Will:** PAROL EVIDENCE. When a subsequent will is lost or
cannot be produced, it is competent to prove by parol that it
contained a clause revoking the former will.

* Rehearing denied. See opinions, pp. 205, 206, *post.*
16

9. **Destroyed Will**: Evidence. Presumption. If a prior will is proposed for probate by a beneficiary thereof, whose testimony is that he found the will among the effects of the deceased, but did not find a later one (which the evidence shows it would plainly be to his interest to destroy), it will not be presumed that the testator himself destroyed the later will, and that in so doing it was his purpose and intention to revive the former one. The existence of a fact cannot be presumed from another fact which itself rests wholly on presumption.

APPEAL from the district court for Richardson county: John R. Thompson, Judge. *Reversed with directions.*

*John L. Webster, Smith P. Galt, Reavis & Reavis, I. J. Ringolsky* and *J. H. Atwood,* for appellants.

*J. H. Broady,* for appellant Samuel A. Miles.

*Clarence Gillespie, E. Falloon, F. Martin, J. W. Deweese* and *T. J. Mahoney, contra.*

Sedgwick, J.

After the death of Steven B. Miles, an instrument purporting to be his last will and testament was duly presented to the county court of Richardson county, and, upon consideration of that court, was duly allowed as his last will. After the time for taking an appeal from this order of the probate court had elapsed, these appellants and others filed a petition in the county court to set aside the probate of the will, and asking for leave to present for probate an alleged later will of the decedent and for general equitable relief. Issue was joined upon this petition and upon trial in the county court the action was dismissed. An appeal was taken to the district court, and, upon trial, judgment was there also rendered in favor of the defendants, the appellees here, and from that judgment an appeal was taken to this court. A motion was made in this court to dismiss the appeal on the ground that the action was not appealable and that this court had no jurisdiction of the action by appeal. This motion was

overruled. *Williams v. Miles,* 63 Neb. 859. Afterwards, upon final hearing in this court upon the merits of the controversy, the judgment of the district court was affirmed (*Williams v. Miles,* 68 Neb. 463), and a motion for rehearing therein was overruled. *Williams v. Miles,* 68 Neb. 479. Before the action was disposed of in this court the appellants began this proceeding in the district court for Richardson county. It is a petition for a new trial on the ground of newly discovered evidence. Upon the trial of this action in the district court a judgment was rendered in favor of the appellees, and the appellants have again appealed to this court. A motion of the appellees to dismiss this appeal was overruled. No opinion was filed at the time and it seems proper to briefly state the reasons for that ruling:

1. An able and exhaustive argument is made in the briefs that the original action brought in the county court to vacate the order admitting the will to probate is not an action in equity. It is urged that the county court is not given any general equity jurisdiction and that while it may exercise equitable powers incidentally, actions in equity within the meaning of the statute providing for appeals in equity cannot be brought in that court. It is also urged that the proceeding in the county court to vacate the probate of the will was brought under subdivision 4 of section 602 of the code, proceedings under that section being expressly made available in the county court in probate matters by section 610. The writer does not desire to express an opinion upon the merits of this contention when viewed in the light of an original question. The answer of appellants to this argument is that when the decision upon this application for a new trial was against them in the district court, and they were compelled to determine whether their remedy was by appeal to this court or by petition in error, they had before them the opinion of this court upon the former appeal, 63 Neb. 859, and by that opinion it was decided that this is an action in equity and appealable to this court. They acted

upon that decision and again brought the case here by appeal.

We think this is a complete answer to the argument of appellees on this point. If a decision of this court should ever become the law of the case, it should be upon a question of practice, when the parties to the litigation have acted upon that decision and guided their practice by it. It is established then as the law of this case that the proceeding in the county court to vacate the probate of the will was an action in equity within the meaning of the statute allowing appeals to this court.

2. The next ground for the motion was that the proceeding was begun in the wrong court. The county court is by the constitution given original jurisdiction in all probate matters, and by statute it has exclusive original jurisdiction of the probate of wills. The statute, however, provides: "In all matters of probate jurisdiction, appeals shall be allowed from any final order, judgment, or decree of the county court to the district court." Comp. St., ch. 20, sec. 42; Ann. St. 4823. Section 47 provides that when an appeal has been perfected in the district court "that court shall be possessed of the action, and shall proceed to hear, try, and determine the same, in like manner as upon appeals, brought upon the judgment of the same court in civil actions." This removes the issues to the district court for final determination. The district court must "hear, try, and determine the same." The evidence is taken and the cause tried without regard to the evidence in the lower court. The result, not the case itself, is certified back to the county court. After the district court becomes so possessed of the case, the county court will never have any further jurisdiction over the issues so removed. If there is another trial of the case it must be in the district court. There can be no doubt that the district court is the place to make application for such trial. It was determined by this court upon the first appeal that the action to set aside the probate of the will was a new action, equitable in its nature, and was prop-

erly begun in the county court and afterwards appeale 1 to the district court. There having been a trial thereof in the district court, that court and no other might grant a new trial. This proceeding for a new trial then was rightly brought in the district court.

3. The third ground for the motion is stated in the brief as follows: "No appeal lies from the district court to this court for refusing an application made in the former court for a new trial to set aside a probated will on the ground of newly discovered evidence. The right to maintain this action, if at all, is given by section 318 of the code."

*Risse v. Gasch,* 43 Neb. 287, is relied upon. That was an ordinary contest of the probate of a will, appealed from the county court to the district court, and proceedings in error were prosecuted in this court to reverse the judgment of the district court. It was determined upon the former appeal, and has become the law of this case, as before pointed out, that this action, begun in the county court to set aside the probate of the will, was an action in equity and was properly tried as such in the district court upon appeal; so that the application for a new trial was an application in an action in equity. It is contended in the brief that an order denying an application for a new trial in an action in equity under section 602 of the code is not appealable but can only be reviewed in this court upon proceedings in error. *Browne v. Croft,* 3 Neb. (Unof.) 133, is cited for this doctrine, but upon rehearing of that case the doctrine was repudiated. 3 Neb. (Unof.) 134. It is there held that the appeal was properly dismissed because the order appealed from was not a final order; but *Iler v. Darnell,* 5 Neb. 192, and *Morse & Co. v. Engle,* 26 Neb. 247, are cited and approved, and in those cases it is made plainly to appear that the proper construction of the statute is that such orders are appealable. Under our statute appeals are allowed "in actions in equity" and in such action any order or proceeding that may be brought to this court for review may be brought by appeal.

4. It is urged that "there is no statutory authority for

granting another trial on a second petition to impeach a judgment." By this it must be meant that when an action in equity is brought for the purpose of setting aside a default judgment obtained by fraud and this action in equity has been tried, there can be no new trial of this equitable action on the ground of newly discovered evidence. To this proposition we cannot agree. If, as was held upon the former appeal, this action begun in the county court to set aside the probate of the will was an action in equity, after it had been tried in the county court and appealed to the district court, and there tried, there can be no reason for refusing the district court jurisdiction to entertain an application for a new trial that would not apply to any other trial and judgment in the district court.

5. It is contended that, "as more than one year had elapsed since the county court first probated the Rulo will, an application for a new trial could not be made in the district court because the county court has exclusive and original jurisdiction in all probate matters." This is but a repetition of the former grounds which have already been discussed. This application for a new trial was made within the statutory time after the judgment of the district court was rendered in the action which had been appealed to that court, and in which a new trial was sought in the district court.

For the foregoing reasons the motion to dismiss the appeal was overruled.

Second. We are required by this appeal to review the whole proceedings, and determine whether these appellants were entitled to a new trial in the district court. The evidence upon the former trial in the district court as preserved in the bill of exceptions was received in evidence upon the hearing in that court of this application for a new trial. Several witnesses were examined and their evidence is also preserved in the bill of exceptions. The evidence is embraced in seven large volumes of typewritten matter. The new evidence is, of course, to be con-

sidered with the issues, evidence and decree upon the former trial. Many of the questions disposed of upon the former appeal have been reargued at great length. Upon a reexamination of the former evidence we are satisfied with the conclusions of fact reached, and are content to regard the principles there announced as the law of the case. No further analysis of that evidence is demanded.

1. It is contended that the petition and evidence do not show due diligence on the part of the appellants to discover and avail themselves of the additional evidence which they now produce. It will be remembered that the will which has been admitted to probate by the decree already entered in this case was executed in 1888, and is known as the Rulo will. Upon the first hearing in the district court these appellants attempted to show that Mr. Miles had executed a will in 1897, which is called the St. Louis will, and was alleged to have been executed at the St. James Hotel in St. Louis. There was evidence upon that trial, as is stated in the opinion upon the former appeal (68 Neb. 463, 475), tending to show the execution of this St. Louis will, and it is said in that opinion:

"Without going over the details, we may say that the evidence produces a strong conviction that a will of some sort was made at St. Louis. There is not only the testimony of the two subscribing witnesses, but a very considerable mass of circumstantial evidence. Moreover, the declarations of the testator are well authenticated and circumstantial."

In the application for a new trial it was alleged that the plaintiffs had learned that one Paul T. Gadsen, at that time a lawyer practicing in St. Louis, had prepared the St. Louis will for Mr. Miles, and upon the hearing the evidence consisted mainly of the testimony of the said Gadsen and the testimony of other witnesses which was introduced for the purpose of corroborating him. It is insisted that it does not appear that the plaintiffs used due diligence in discovering the whereabouts of the witness Gadsen and in endeavoring to procure his testimony upon the

trial of the case. The witnesses who testified to the execution of the will were not able to give the name of the lawyer who prepared it. They testified that they were called to the room where Mr. Miles was with this lawyer, who was a stranger to them, and that they made no inquiry as to his name. The appellants caused notices to be published in the St. Louis papers and sent notices asking for information to the members of the St. Louis bar generally and obtained no response. Soon after the first trial in the district court Thomas L. Cannon, a citizen of St. Louis, having seen some of the articles in the press in regard to the trial informed Judge Galt, who was an acquaintance of his and who was also one of the attorneys for appellants, that in the year 1897 Paul T. Gadsen was practicing law in the city of St. Louis, and occupied a room in Mr. Cannon's house, and that during that year Gadsen had talked to him about writing a will for an old gentlemen from Nebraska, and also informed Judge Galt that Gadsen had afterwards left the city of St. Louis and had gone to Mexico, and referred Judge Galt to a former partner of Mr. Gadsen's for his address. Judge Galt appears to have promptly ascertained that Gadsen had gone to the city of Mexico, and obtained what purported to be his address in that city, and addressed a letter to him to obtain further information, but it appears that Gadsen had left the city of Mexico and did not answer Judge Galt's letter; and afterwards upon further inquiries, Judge Galt received what then seemed to be reliable information that Gadsen had been very sick, and that it was reported among his acquaintances in St. Louis that he was dead. Judge Galt testifies that he made, as far as he could, inquiries that would lead to finding Mr. Gadsen, and was led to and did believe that he was dead, and so made no further inquiries. A short time afterwards it was learned that Gadsen was living, and steps were immediately taken to ascertain his whereabouts, and he was soon thereafter procured to make an affidavit stating his knowledge in regard to the execution of the will, in which he testified that he

drew the will for Mr. Miles, and that he was present at its execution, and gives a synopsis of the contents of the will. There is other evidence bearing upon this question of the diligence of the appellants in procuring this evidence, and without going into further detail it is sufficient to say that it impresses us as amply sufficient upon that point.

2. In considering whether the evidence is sufficient to require the granting of a new trial, it must be borne in mind that the rule is established in this state that the "legitimate effect of the new evidence" must be such as to require a different decision from that which it is sought to set aside. The inquiry is not whether, taking the newly discovered evidence in connection with that produced on the trial, a different decision might be rendered, but whether the whole evidence, taken together, would require a different decision. *Omaha, N. & B. H. R. Co. v. O'Donnell,* 24 Neb. 753. It must be "of so controlling a nature as to probably change the verdict." *Lillie v. State,* 72 Neb. 228. It has already been pointed out that it was considered upon the first appeal that the evidence then before us produced "a strong conviction that a will of some sort was made at St. Louis." Upon the hearing of this application for a new trial the district court found that "there was a will made by Stephen B. Miles, deceased, in 1897, at St. Louis." The witness Paul T. Gadsen positively testifies to this fact. He also states quite definitely the contents of the will. The character of this witness and the reliance to be placed upon his testimony will be again referred to. It is sufficient now to say that we consider the whole evidence amply supports this finding of the trial court.

3. It was considered upon the former appeal that the evidence then presented was not sufficient to show that the St. Louis will contained a revocatory clause. The witness Gadsen upon this last hearing testified positively that such a clause was inserted in the will. He says that Mr. Miles asked him if it was necessary to have such a clause in order to revoke the former will, and that he him-

self was of the opinion that such clause was not necessary, and so informed Mr. Miles, but afterwards he (Gadsen) mentioned the matter to Judge Wind, whose office was with Mr. Gadsen, and Judge Wind advised him that such clause should be inserted in the will if it was desired to revoke the former will, and that after considering and studying the matter, Mr. Miles insisting that the clause should be inserted, he inserted the clause. He says that it was in substance, "I declare this will to be in revocation of all previous wills and testaments I have made." It was determined upon the former appeal that when a later will is lost or cannot be produced, it is competent to show by parol evidence that it contained a revocatory clause. It is insisted that the only evidence in this record upon this point is the evidence of the witness Paul T. Gadsen, and that his evidence is shown by the record to be so unreliable that it is not sufficient for the purpose of establishing this fact. Mr. Gadsen appears to come from a distinguished family of that name in South Carolina. He is the son of a clergyman. He was a graduate of a southern university and took a course of legal studies from which he graduated in 1893, and having pursued his studies for another year, he entered upon the practice of his profession in the city of St. Louis in the early part of the year 1895. He seems to have been in some way associated with Judge Wind, who was a lawyer with an established practice, but Mr. Gadsen does not appear to have been a man of fixed business habits, nor to have acquired a very extensive law practice. He left St. Louis in 1898. At this time he appears to have been assignee of an assigned estate, and he so managed the business that he was superseded by another assignee who subsequently recovered a judgment against Mr. Gadsen and his sureties as assignee. While in St. Louis he was employed by the city, and one witness testifies that he was worthless in the office, and was lazy and unreliable; that what he did "could not be relied upon, and had to be done over." On the other hand his personal honor and honesty are established by many witnesses

whose evidence cannot be doubted. The preparation of the will in question appears to have been the first important business of that character that was ever intrusted to his care. His conduct in regard to it may not have been characterized with the dignity and care which business of that character usually inspires in the practiced lawyer. His detailed statements of the contents of the will are not of sufficient character and consistency to justify a probate court in relying upon them to establish for probate the contents of a lost will. But we find nothing in the record to indicate that his evidence is corrupted with perjury, or that he, as a witness, was inspired with a desire to deceive the court. It is said that it is incredible that a man with the habits and business experience of Mr. Miles would go to an unknown young lawyer, an utter stranger to him, for the transaction of such important business, but business men do not always appreciate the importance of high professional skill and experience in the preparation of wills. The conduct of Mr. Miles in this instance was not more singular than in other instances disclosed in the evidence. If the evidence of the proponent of the Rulo will is to be believed, this testator, ten years after the execution of that will which disposed of more than a million dollars worth of property, was keeping it with worthless papers and soiled clothing in an old "satchel" which he was accustomed to carry with him. The testimony of Judge Wind corroborates Mr. Gadsen's testimony upon his statement that the will contained a revocatory clause. The evidence of this witness has every mark of reliability. He says that about the noon hour when he was alone in the office "the telephone rang, and I answered it. Some one asked for Mr. Gadsen; I answered that he was not in, and then asked if they desired to leave any word for him. I was then requested to leave word for Mr. Gadsen to come to the St. James Hotel as soon as he came back." Soon afterwards a gentleman called at the office. Judge Wind says: "The gentleman handed me a card or gave me the name of Miles and said please tell Gadsen to come to the

St. James Hotel as soon as he comes in." He says that about this time, and in connection with this transaction, Gadsen questioned him in regard to the necessity of a revocatory clause in a will and that he told Gadsen "by all means to put in a revocatory clause in every will, particularly if you have any knowledge of a will having been written before that time." And that his understanding from Gadsen at the time was that the revocatory clause was inserted in the will. The evidence of this witness and other corroborative evidence in the record tending to show that the will prepared by Mr. Gadsen contained the revocatory clause, is wholly uncontradicted. We think that it is shown by a strong preponderance of the whole evidence that the St. Louis will in express language revoked the former will.

4. The trial judge in his findings said: "But if we consider the St. Louis will revoked the Rulo will by implication or otherwise, then the question of the revivor of the 1888 will comes up for our consideration." On this point the decision of the trial court was made to turn. This appears to be a question of law and we think it has been incorrectly determined by the trial court. It will be remembered that the will which Joseph H. Miles presented to the county court for probate made him the principal beneficiary. He testifies that after having searched exhaustively he finally found the Rulo will in his father's satchel in the room at the hotel where he died, and that he found no other will there. It is insisted that this raises the presumption that the deceased destroyed the St. Louis will, and that from this presumption another presumption arises that in doing so he intended to revive the Rulo will. There is some conflict in the authorities in regard to the effect of the destruction of a later will. It has in some cases been held that upon proof that the testator destroyed the later will which contained a revocatory clause, the presumption will arise that he intended thereby to revive the former will. It is doubtful whether in these cases it is intended to declare the rule that by the mere fact of the

destruction of the later will by the testator, and without other evidence to be derived from surrounding circumstances and his proved declarations, the former will is revived. We have no hesitancy in saying that no such principle can be invoked in a case like this where the one principally benefited by the former will brings that will forward, claiming that he has found it under such extraordinary circumstances, and denying that he has found with it the later will which it would be so much in his interest to suppress. If the presumption could arise from such circumstances that the testator had destroyed the later will, it would not follow that from that presumption we must raise the further presumption that in so destroying it he intended to revive the former will. We think the true principle of law is announced upon the decision of the former appeal, and that the present is a very strong case for its application. This evidence showing that the Rulo will was revoked by the subsequent will, there being no evidence from which it can be found that the former will was revived, would require the rejection of the Rulo will.

The decree of the district court refusing a new trial is therefore reversed and the cause remanded, with instructions to grant a new trial as prayed.

REVERSED.

The following opinion on motion for rehearing was filed October 19, 1905. *Rehearing denied:*

PER CURIAM.

In this case the appellees have filed a motion for rehearing, principally upon the ground that the newly discovered evidence offered is not sufficient to justify this court in reversing the ruling of the lower court by which a new trial in that court was refused. This motion is supported by an exhaustive and able brief which reviews the main features of the whole case. We have studied this brief and the parts of the record to which it refers with great inter-

est.   Manifestly the whole record, including the evidence offered upon the application for a new trial in this court, presents issues of fact which are peculiarly within the province of a jury to try, and upon this reexamination of the case we are entirely satisfied that the additional evidence offered in the district court upon this application for a new trial is of such a character that the interests of justice demand that the whole evidence together be submitted for a determination of the issues presented.   Upon the evidence as it now is in this record, it would be the duty of the district court to set aside its former judgment upon the probate of the will, and the orders of the county court in that regard, and retry the whole case presented by the proponents and contestants of both of the alleged wills respectively.   The language used in the former opinions of this court, commenting upon the evidence of the various witnesses, was used with reference to the questions presented in this court only, and was not a discussion of the weight that should be given to this evidence upon a new trial of this case.   The court will apply the law of the case so far as it has been determined by this court, but the discussion of the evidence here will not restrict the trial court in its examination and submission of the questions of fact.

The motion for rehearing is

OVERRULED.

The following opinion on motion to modify opinion on rehearing was filed February 8, 1906.   *Motion overruled:*

SEDGWICK, C. J.

The plaintiff has filed a motion to modify the language used in the memorandum upon the order overruling the motion for rehearing.   In the brief and argument thereon it was contended that the language would admit of the construction that the district court could not take further evidence before setting aside the order of the county court appealed from and all proceedings in the district court

thereon. This was not the idea intended. What was meant was that, if the evidence introduced before the district court upon the new trial which has been ordered should be the same as it now is in this court, it would be sufficient to require the district court to reverse the order of the county court in refusing to set aside the probate of the Rulo will. When the county court refused to vacate the default judgment probating the Rulo will, and an appeal to the district court was taken from this order of the county court, what did that appeal remove to the district court? If the district court had decided it as the appellants wished, what would the district court have done next? Would it have certified back to the county court that the order of that court refusing to vacate the probate of the will was set aside and direct the county court to proceed to retry the question on the probate of the will, or would the district court have retained the whole matter, and proceeded to the trial of the will contest itself? If it did proceed to the trial of the will contest itself, of course it would have to investigate the question of the St. Louis will, because, if a subsequent will was made in St. Louis which operated to revoke the Rulo will, that would require the court to reject the Rulo will. Now, if the case had proceeded thus far, would the district court then proceed to consider whether the St. Louis will should be established and admitted to probate, or would it remit that question to the county court for trial—a question which it had itself already tried and determined?

The *per curiam* memorandum goes upon the theory that, when the first appeal was taken to the district court, it removed the whole controversy in regard to whether the estate was testate or intestate, so that the district court then had jurisdiction of the whole matter. Our view of the matter was that, as a new trial had been ordered, if upon that new trial the evidence should turn out to be the same as it is in this record, it would be the duty of the district court to decide that the county court was wrong in refusing to vacate the probating of the will, and, having

decided that, it would be the duty of the court, of course, to declare the probate of the will by the county court vacated, and that then the district court would not remit the case to the county court, but would itself try the question as to whether the Rulo will should be established as the will of the deceased, and in trying that question would necessarily try also the force and effect of the St. Louis will. This would require the court to determine which will, if either, should be admitted to probate, so that this trial before the district court would be a trial of all the issues presented, and the parties would be entitled to a jury.

In the argument upon the motion we were led to believe that there may be some doubt about the practice so indicated, but in view of the prior holdings in this case, and the condition of the record, we conclude that our former memorandum, as here explained, indicates the correct practice.