IN RE ESTATE OF FRANCES MAUDE THOMPSON, ALSO
KNOWN AS F. MAUDE THOMPSON AND MAUDE
THOMPSON, DECEASED.
JOHN E. FINLEY, APPELLANT, v. VICTOR E. THOMPSON,
APPELLEE.
336 N.W.2d 590

Filed July 22, 1983. No. 82-488.

John P. Heitz, for appellant.

Warren L. Reimer of Ptak, Ptak & Reimer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

CAPORALE, J.

Victor E. Thompson, appellee herein, filed a petition for the probate of the last will and testament dated September 2, 1964, of his deceased wife, Frances Maude Thompson. The appellant, John E. Finley, son of the decedent through a prior marriage, filed a petition seeking a formal adjudication of his deceased mother's intestacy. The county court admitted the 1964 will to probate. On appeal the District Court sustained the proponent husband's motion for a directed verdict at the close of the con-

testant's evidence, dismissed the contestant's petition, and admitted the 1964 will to probate. We affirm.

The District Court's actions must be tested in accordance with the rule that a motion for a directed verdict must be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Frahm v. Carlson, ante* p. 532, 334 N.W.2d 795 (1983); *Flakus v. Schug,* 213 Neb. 491, 329 N.W.2d 859 (1983).

The son's claim is that his mother executed a subsequent will which revoked the 1964 document offered for probate by the husband. The only evidence concerning the issue is the testimony of the contestant son and his wife. It is to the effect that in July of 1965 they examined and read a one- or two-page typewritten document which the decedent, a Nebraska resident, showed them while she was visiting at their home in Colorado, and which she said was her will. The document began with the words, "Last Will and Testament of Frances Maude Thompson." It contained two signatures in addition to that of his mother, but they could not recall whose they were. According to the son, there was also "some kind of a mark on it for a notary." It bore a 1965 date, but he could not recall the month. The son believed, but could not "swear," that the document contained a clause revoking former wills. His wife recalled such a clause. The son testified further that "The Will specified that if [sic] the property was first to go to Vic Thompson and then to me without restriction, in other words, he wouldn't be deprived of this property during his life time. . . . It had nothing in there that said, specific words, for life." His wife generally corroborated the son in

this regard. They could recall no other specific portions of the document.

It is the son's contention that although the above-cited testimony is insufficient to establish the distributive provisions of the 1965 will so as to entitle it to probate, the evidence is sufficient to establish that a will was duly made and executed after the 1964 will such as to destroy the earlier will. The effect of that circumstance would be that his mother would have died intestate and her property would therefore be subject to distribution under the laws of descent rather than under the 1964 document. In support of that contention he cites Neb. Rev. Stat. § 30-2332 (Reissue 1979); *Clark v. Turner*, 50 Neb. 290, 69 N.W. 843 (1897); and *Williams v. Miles*, 62 Neb. 566, 87 N.W. 315 (1901), 63 Neb. 851, 89 N.W. 455 (1902), 63 Neb. 859, 89 N.W. 451 (1902), 68 Neb. 463, 94 N.W. 705 (1903), 68 Neb. 479, 96 N.W. 151 (1903), 73 Neb. 193, 102 N.W. 482 (1905), 87 Neb. 455, 127 N.W. 904 (1910). Section 30-2332 provides: "A will or any part thereof is revoked (1) by a subsequent will which, as is evident either from its terms or from competent evidence of its terms, revokes the prior will or part expressly or by inconsistency; or (2) by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in the presence of and by the direction of the testator." *Clark v. Turner, supra,* denied probate to a purported subsequent will which had been either lost or stolen. The effective holding of that case is that the declarations of a testator are competent evidence as to whether a will was made, but are insufficient of themselves to prove its contents. See, also, *Muse v. Stewart,* 173 Neb. 520, 113 N.W.2d 644 (1962). The *Clark* court observed it did not appear that any person ever read the will or was aware of any portion of its contents except through statements made by the testator. That is not the situation herein, as the son and his wife testified they did read the 1965 document and

knew some of its contents. The *Clark* court further noted, however, that while a lost will may be established by secondary evidence, the evidence must be "direct, clear, and convincing." 50 Neb. at 302, 69 N.W. at 846. The long and tortuous progress of *Williams v. Miles* ultimately resulted in the dismissal of the petition brought by those seeking to establish a purported subsequent lost or stolen will. The case finally rested on the factual determination that no subsequent will had ever existed. In reaching that result this court reaffirmed what it called "the well-settled doctrine" of this state that " 'parol evidence to show that a former will was revoked by implication by reason of a subsequent will, which cannot be found, must be clear, unequivocal and convincing.' " 87 Neb. at 479, 127 N.W. at 913.

In the posture of this case the threshold question becomes whether the contestant's evidence meets the "clear, unequivocal, and convincing" standard required to establish that a subsequent will was duly executed. We find that it does not.

One need look no further than the first two sentences of the Comment to § 30-2332 to reach that conclusion. Those sentences read: "Revocation of a will may be by either a subsequent will or an act done to the document. If revocation is by a subsequent will, it must be *properly executed*." (Emphasis supplied.) The evidence does not tell us where the will was executed, what formalities, if any, the witnesses observed in affixing their signatures to the document, or what role a notary, if any, played in the execution process.

We are not told in what jurisdiction the purported subsequent will was executed, nor was the trial court presented with any foreign law. Under those circumstances we presume the common law or statutes of whatever jurisdiction may be relevant are the same as those of Nebraska. Neb. Rev. Stat. § 25-12,101 (Reissue 1979); *Scott v. Scott*, 153 Neb. 906, 46 N.W.2d 627 (1951).

In 1965, Neb. Rev. Stat. § 30-204 (Reissue 1964) provided that, except for nuncupative wills, and wills properly executed in other jurisdictions, wills must be signed by the testator, or some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by two or more competent witnesses. No showing exists that these formalities were followed. Faced with the same language as to method of execution presently contained in Neb. Rev. Stat. § 30-2327 (Reissue 1979) that, except for holographic wills, certain written statements, and wills properly executed in other jurisdictions, every will is required "to be signed by at least two individuals each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will," the court in *Matter of Estate of Weidner*, ____ Mont. ____, 628 P.2d 285 (1981), held that where it could not be established that there was a second individual who had witnessed either the signing or the testator's acknowledgment of her signature, there was insufficient evidence to support a finding that the will was fully executed and thus it could not revoke a prior will. We do not read the language of *Williams v. Miles* found in 68 Neb. at 466-76, 94 N.W. at 706-10, to state otherwise. That portion of the *Williams* history recites that the two attesting witnesses testified the purported testator asked them to witness his signature to his will, that he signed his name to the document, which they did not read, in their presence, and procured their signatures. In discussing that testimony the court, through Pound, C., said that if the instrument were in fact signed, attested, and subscribed, as required by the statute, a formal clause reciting the details of the transaction was not required.

There was no evidence before the trial court herein as to the manner in which the 1965 document was executed. We conclude, therefore, that as a matter of law the evidence does not clearly, unequivocally,

and convincingly establish that the 1965 document was properly executed as the last will and testament of the contestant's mother.

The trial court was correct in sustaining proponent's motion for a directed verdict.

AFFIRMED.